1  Michael Cohen - #98066                    E-filing            Original
   LAW OFFICES OF BRUCE E. KRELL                                  FILED
2  Grove Law Building                                             6/29/07
   345 Grove Street                                    Richard W. Wieking
3  San Francisco, CA 94102                       Clerk, U.S. District Court
   415/861-4414                               Northern District of California
4  Fax: 415/431-4526                                              Oakland

5  Attorney for Plaintiffs

6                                                                     ADR

7

8        UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

9  THE FAMILY OF LELA KAYE HORNER:        No. C07-03441 WDB
   Harold Horner, Connie Britt, Andy Horner,
10 Cheryl Horner,                         **COMPLAINT**

11        Plaintiffs,

12 vs.

13 Keystone America Inc., dba Jones and Lewis
   Clear Lake Memorial Chapel, and DOES 1-100,
14
          Defendants.
15 _____/

16        Plaintiffs, by and through counsel, hereby complain against Defendants as follows:

17                            **JURISDICTION**

18        1.    This action arises out of the mis-handling, by Defendant Cemetery and Funeral

19 Licensees, of the body of Plaintiffs' Decedent LELA KAYE HORNER.  Jurisdiction is founded

20 upon 28 USC 1332, in that the Plaintiffs are citizens of California, and the named Defendant is a

21 citizen of Delaware, where it is incorporated, and Florida, where its principal place of business is

22 located.

23                       **INTRA-DISTRICT ASSIGNMENT**

24        2.    A substantial part of the events and/or omissions complained of herein occurred

25 in Lake County, California, and this action is properly assigned to the Oakland or San Francisco

26 Divisions of the United States District Court for the Northern District of California.

**PLAINTIFFS**

3.     Plaintiff HAROLD HORNER is the Husband of Decedent LELA KAYE HORNER; he is a citizen of the State of California.

4.     Plaintiff CONNIE BRITT is the Daughter of Decedent LELA KAYE HORNER; she is a citizen of the State of California.

5.     Plaintiff ANDY HORNER is the Son of Decedent LELA KAYE HORNER; he is a citizen of the State of California.

6.     Plaintiff CHERYL HORNER is the Daughter of Decedent LELA KAYE HORNER; she is a citizen of the State of California.

7.     Plaintiff LARADA HORNER is the Sister of Plaintiff HAROLD HORNER; she is a citizen of the State of New Mexico.

8.     The HORNER family is, and at all times relevant was, an extremely close knit family, regardless whether the family members lived in California where LELA and HAROLD had lived for 24 years, or in the Colorado/Texas/New Mexico area, where LELA and HAROLD grew up and met.

**DEFENDANTS**

9.     Defendant KEYSTONE AMERICA, INC. dba JONES AND LEWIS CLEAR LAKE MEMORIAL CHAPEL, at all times herein mentioned was a corporation, organized in Delaware, with its principal place of business in Florida, and licensed by the State of California to engage in the cemetery and funeral profession.

10.     Plaintiff is informed, believes and thereon alleges that, at all times herein mentioned, Defendants DOES 1 through 40, inclusive, and each of them, were and are individuals, corporations or non-incorporated entities, licensed under California laws to perform various functions in the cemetery and funeral profession, including but not limited to the following functions: Cemetery Manager, Crematory Manager, Cemetery Broker, Cemetery Broker Additional, Cemetery Salesperson, Cremated Remains Disposer, Funeral Director, and/or

1  Embalmer,  and were engaged in those functions as agents and/or employees of the above-

2  mentioned corporate Defendants, and each of them, in Lake County, California; and, at all times

3  herein mentioned, were acting within the course and scope of this agency and/or employment.

4       11.    Plaintiff is informed, believes and thereon alleges, that, at all times herein

5  mentioned, Defendants DOES 1 through 60 inclusive, and each of them, were engaged and/or

6  employed in various capacities in the cemetery and funeral profession, including but not limited

7  to the following capacities: Cemetery Manager, Crematory Manager, Cemetery Broker,

8  Cemetery Broker Additional, Cemetery Salesperson, Cremated Remains Disposer, Funeral

9  Director, and/or Embalmer, acting in the aid or assistance of the named Defendants and each of

10  them, and acting within the course and scope of this engagement, agency and/or employment.

11       12.    Plaintiff does not know the true names and capacities, whether corporate,

12  associate or individual, of Defendants DOES 1 through 100, inclusive, and therefore sues them

13  by those fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each of

14  those Defendants was in some manner negligently and legally responsible for the events and

15  happenings alleged in this complaint and for plaintiff's injuries and damages.

16       13.    Plaintiff is informed and believes, and thereon alleges, that, at all times

17  mentioned, each of the Defendants, named and DOES, was the agent and employee of each of

18  their codefendants, and in doing the things alleged in this complaint were acting within the

19  course and scope of that agency and employment.  Moreover, the conduct of each Defendant

20  herein was authorized and/or ratified by each of the remaining Co-Defendants; and each

21  Defendant, when acting as a principal, was negligent in the selection and hiring of each other

22  Defendant as an agent or employee.

23                   **FACTS**

24       14.    On or about July 7, 2005, LELA died, at age 50, following a long and decimating

25  illness.

26       15.    The following day, Plaintiffs HAROLD HORNER, CONNIE BRITT, ANDY

Complaint

HORNER and CHERYL HORNER, along with LELA's parents and LELA's sisters, met with a representative of Defendants and each of them and HAROLD HORNER contracted with Defendants and each of them to embalm LELA's body and provide other related services so that the family, both in Northern California and later in Colorado could honor her with a traditional service, and to see her a last time, more as they remembered her from before the cruel illness which struck her down too early in life.

16.    The Northern California service was scheduled for the following Tuesday, July 12th in Lake County. The Colorado service was scheduled for Saturday, July 15th, in Branson, Colorado.

17.    Apparently because "nobody (at least from the staff of Defendants and of each of them) works on the weekend", LELA's body was not embalmed until Tuesday morning, the 12th; and, for reasons unknown, the embalming was done, apparently hurriedly, by an apprentice, who, shortly thereafter, was no longer employed by Defendants and each of them. The embalming was extremely poorly done.

18.    At noon on the 12th, the family arrived on schedule to view LELA's body privately. The family was kept waiting for over a half hour; and, when family members were shown the body, they were shocked.

19.    LELA's body, especially her face and throat, was bloated or swollen to the point where she was unrecognizable. Further, her jaw line and the wig that was placed on her head were distorted by the way her head had been propped up, such that her son had to request a representative of Defendants and each of them to try to fix it.

20.    Additionally, representatives of Defendants and each of them conducted their other duties and relations with the family so carelessly as to destroy for the family the important, life passage experience, help and support for which it is Defendants' and each of their professional duty to provide, and for which help and support the family was so dependent upon Defendants and each of them. Instead of this help and support, Defendants and each of them

4

Complaint

1  provided the following:

2          a.      A representative of Defendants and each of them, whose specific duty it

3  was to help and support the family at the time of the viewing, obsessively regaled the family

4  with a discussion of his Parkinson's condition, and his impending retirement to which he was

5  looking forward, stating that this most delicate of occasions for the family was his last "job".

6          b.      This gentleman also brought the wrong fliers to the Chapel service, so he

7  had to drive back to the offices of Defendants and each of them and get the right ones; and he

8  was consequently late such that a number of people did not receive the fliers in time for the

9  service.

10         c.      Defendants and each of them, additionally, failed to place the obituary in

11 the local papers in time, so a number of people who would have come had they seen it, could

12 not.

13         d.      Also particularly disconcerting, at the least, to the family, who were

14 naturally extremely sensitive because of their vulnerability in the circumstances, was the vast

15 discrepancy between the price the representative of Defendants and each of them had discussed

16 with many of the family present on the 8th ($2,895.00, "including everything"), and the

17 $7,500.00 bill which Defendants and each of them presented to Plaintiffs HAROLD HORNER,

18 ANDY HORNER, ELVA HORNER and LARADA HORNER on the 11th.  After Plaintiff

19 LARADA HORNER demanded an explanation, a representative of Defendants and each of them

20 told the family only that the many items on the bill which Plaintiff HAROLD HORNER had not

21 chosen to use and which were never discussed with him were part of a "package deal"; but no

22 "package deal" had ever been discussed with anyone in the family.

23         21.     The awful effects of the wrongdoing of Defendants and each of them, both

24 materially and emotionally, continued in Colorado.

25         a.      To begin with, Defendants and each of them failed to place the obituary in

26 the local paper in Colorado; then, the obituary that Defendants and each of them placed in the

Complaint

1  local paper in LELA's birthplace, in nearby Clayton, New Mexico, was missing important

2  information.

3          b.    On Friday, the 15th, the local mortician in Colorado, Mr. Murphy, checked

4  the body, found "purge" coming out of the corner of the mouth, and did what he could to fix the

5  problem temporarily, knowing that he would have to do certain things before the service the

6  following day, Plaintiff HAROLD HORNER having decided to wait until the next day to see his

7  wife for the last time, at the hometown church where they were married 32 years before.

8          c.    However, the consequences of the execrable job of embalming by

9  Defendants and each of them, which was so bad there was nothing Mr. Murphy could do to

10  remedy it, resulted in Plaintiff HAROLD HORNER being deprived of his last look at his wife.

11          (1)    On checking the body the following morning, Mr. Murphy found

12  yet more "purge", the pillow partially soaked, and a noticeable odor.

13          (2)    Mr. Murphy did what he could; but there was no chance of

14  reversing the consequences of Defendants' and each of their extraordinarily bad embalming; and,

15  when he opened the casket later that day at the church to do what he hoped would be sufficient

16  touch up to allow the family its last viewing, he discovered that the "purge" had accelerated to

17  the point where the entire lining was soaked from head to toe and the odor had become a lot

18  worse; so, he called in LELA's sister, and another family member, Plaintiff CHERYL

19  HORNER's fiancé', Ted Christensen; and the then unavoidable decision was made to abandon

20  hope for an open casket service, thereby unhappily denying the family and friends gathered there

21  their final chance to see LELA the one last time which is so significant for bereaved families and

22  close friends.

23              **FIRST CAUSE OF ACTION [Breach of Contract]**

24          22.    PLAINTIFFS refer to paragraphs 1 through 21, inclusive, of this Complaint and

25  by this reference make them a part hereof.

26          23.    From and after the time of contracting, Defendants, and each of them, so

6
_____
Complaint

negligently failed to exercise the proper degree of knowledge, skill and care in attending to their and each of their duties pertaining to LELA's body and to the Plaintiff members of LELA's family that those PLAINTIFFS and each of them were caused to suffer the injuries and damages alleged herein.

24.    The contract was written.

25.    The contracting Plaintiff members of LELA's family performed all their obligations to Defendants and each of them.

26.    As a legal and proximate result of the acts of Defendants and each of them, the Plaintiff members of LELA's family were caused to sustain the herein described injuries and damages.

WHEREFORE, PLAINTIFFS pray judgment as set forth below.

**SECOND CAUSE OF ACTION [Negligence]**

27.    PLAINTIFFS refer to paragraphs 1 through 31, inclusive, of this Complaint and by this reference make them a part hereof.

28.    Defendants and each of them performed their professional duties to the Plaintiff members of the HORNER family, including but not limited to Cemetery Manager, Crematory Manager, Cemetery Broker, Cemetery Broker Additional, Cemetery Salesperson, Cremated Remains Disposer, Funeral Director, and/or Embalmer, so negligently as to cause said PLAINTIFFS to sustain the herein described injuries and damages.

29.     PLAINTIFFS are informed and believe, and thereon allege, that, in engaging in the conduct alleged herein, Defendants and each of them acted fraudulently and in conscious disregard of Plaintiff's rights under the meaning of California Civil Code Section 3294; and that this despicable conduct was ratified by managing agents, officers and/or directors of Defendants and each of them.

WHEREFORE, Plaintiffs, and each of them, pray judgment against Defendants, and each of them, for the following:

_____

Complaint

1    A.    General damages according to proof;

2    B.    Special Damages according to proof;

3    C.    Punitive Damages;

4    D.    Pre-Judgment Interest according to law;

5    E.    Costs of this action; and

6    F.    Any other and further relief that the court considers proper.

7    DATED: July 8, 2007                    LAW OFFICES OF BRUCE E. KRELL, INC.

8

9

10

11
                                      By_____/S/_____
12                                          MICHAEL COHEN

13                    **DEMAND FOR JURY TRIAL**

14        PLEASE TAKE NOTICE that Plaintiffs hereby demand a trial by jury in this matter.

15   That is, pursuant to Federal Rules of Civil Procedure ("FRCP"), Rule 38, Plaintiffs demand a

16   trial by jury as is their guaranteed right.  Pursuant to FRCP, Rule 39, Plaintiffs request that the

17   matter be designated as a jury action upon the Court's docket.

18   DATED: June 28, 2007                   LAW OFFICES OF BRUCE E. KRELL, INC.

19

20

21

22
                                      By_____/S/_____
23                                          Michael Cohen

24

25

26

_____
Complaint