**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Family of Lela Kaye Horner, | No. C-07-3441 WDB |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS CROSS COMPLAINT AND DENYING KEYSTONE'S REQUEST TO DISMISS COMPLAINT** |
| Keystone America, Inc., d/b/a Jones and Lewis Clear Lake Memorial Chapel, a Delaware corporation | |
| Defendant. | |
| ——————————————————/ | |
| Keystone America, Inc., d/b/a Jones and Lewis Clear Lake Memorial Chapel, a Delaware corporation | |
| Cross-claimant | |
| v. | |
| Mullare Murphy Funeral Home, Inc., a Colorado corporation, | |
| Cross-defendant. | |
| ——————————————————/ | |

## **INTRODUCTION**

Plaintiffs (the Horner family) are California residents.  The Horners filed their complaint against defendant Keystone America, Inc., alleging breach of contract and negligence arising out of Keystone's allegedly negligent embalming of Lela Horner's body and failure to perform various contractual duties.  Keystone is a Delaware corporation with its principal place of business in Florida.  It

1

operates funeral homes across the nation.  Keystone, operating as Jones and Lewis Clear Lake Memorial Chapel, is licensed to do business in California.

Keystone embalmed Lela Horner's body and coordinated a funeral in Lake County, California.  Subsequently, Keystone shipped Lela's body to Colorado where Thomas Murphy of Mullare-Murphy Funeral Home, Inc., took custody of her, coordinated a funeral in Colorado, and buried Lela Horner in Colorado. Ultimately, plaintiffs could not have an open casket at the second funeral in Colorado because the body was decomposing prematurely.  Plaintiffs allege, among other things, that Keystone did not embalm Ms. Horner properly.

Defendant Keystone has filed a Cross Complaint against cross-defendant Mullare-Murphy Funeral Home in Colorado ("Mullare").  Keystone alleges that, after Lela Horner's body was shipped to Colorado for the second funeral, Mullare handled her body in a negligent manner and that Mullare should be liable to Keystone for indemnity or contribution (based on comparative negligence) if plaintiffs obtain a judgment against Keystone for Keystone's allegedly negligent embalming.

On September 23, 2008, Mullare filed a Motion to Dismiss [the Cross Complaint] for Lack of Personal Jurisdiction ("Motion").  Mullare asserts that it does not have the requisite minimum contacts with California to support jurisdiction.

On December 17, 2008, the Court conducted a hearing in connection with Cross-defendant Mullare's Motion.

## DISCUSSION

The Court applies the law of the state in which it is sitting.  California's long arm statute allows for an exercise of personal jurisdiction to the extent consistent with the Due Process clause of the United States Constitution.  Cal. Code Civ.

2

Proc. §410.10.  Due process requires "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Harris Rutsky & Co., Ins. Services v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) *quoting International Shoe, Inc., v. Washington*, 326 U.S. 310 (1945).  The Court focuses on the relationship among "the [cross] defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Cross-complainant Keystone has the burden of setting forth a basis for exercising personal jurisdiction over Mullare.  At this stage, Keystone need only make a *prima facie* showing of facts sufficient to establish the basis for jurisdiction – *i.e.*, that the facts, if believed, would be sufficient to support jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The Court resolves conflicts in the parties' evidence in Keystone's favor.  The Court also must deem true <u>uncontroverted</u> allegations from the (cross) complaint.

To support an exercise of personal jurisdiction Keystone must demonstrate that Mullare-Murphy had contacts with California sufficient to support either general jurisdiction or specific jurisdiction.  It is uncontested that Mullare's contacts are not sufficient to establish "general" jurisdiction.  Therefore, the Court must determine whether Keystone has made a *prima facie* case of contacts sufficient to support "specific" jurisdiction.

To establish a basis for specific jurisdiction Keystone must demonstrate (1) that Mullare purposefully directed activities to forum residents or purposefully availed itself of the privilege of conducting local activities, (2) that Keystone's claims arise out of or result from the forum-related activities, and (3) that Mullare's contacts are sufficient to conclude that the exercise of jurisdiction would be fair and reasonable under the circumstances.

1    The Court FINDS that Keystone has failed to make a *prima facie* case that

2    Mullare purposefully directed activities to forum residents or purposefully availed

3    itself of the privilege of conducting local activities.  Exercising jurisdiction over

4    Mullare under these circumstances would "offend traditional notions of fair play

5    and substantial justice."  Accordingly, the Court GRANTS Mullare's motion to

6    dismiss the cross-complaint.

7

8    **I.**    **Purposeful Availment**

9    A defendant has contacts with the forum if it purposefully directed activities

10    to forum residents *or* purposefully availed itself of the privilege of conducting

11    local activities.[1]  *Pebble Beach Co., v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

12    Keystone relies on the following alleged contacts: (1) telephone calls between

13    Mullare and the California plaintiffs and between Mullare and Keystone's

14    California funeral home, (2) Mullare executed a contract in Colorado with a New

15    Mexico resident that affected third parties in California and that anticipated

16    shipment (by others) of the body of a California resident to Colorado, (3) the

17    effects of Mullare's alleged conduct (negligence) would foreseeably be felt by

18    people in California and felt by Keystone, an entity operating in California, and (4)

19    Mullare has done business with California residents three or four times over the

20    past five years.

21    Even assuming that the jurisdictional facts as alleged by Keystone are true,

22    Keystone has failed to show that Mullare reasonably should have anticipated being

23

24    [1]Courts sometimes use the term "personally availed" to mean both "purposefully availed"

25    and/or "purposefully directed."  However, the Ninth Circuit has explained that these are different concepts.  *Pebble Beach Co., v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Generally, a

26    defendant purposefully avails itself of the privilege of conducting business here when it takes actions within California that garner defendant some benefit or protections offered by this state.

27    In contrast, when a defendant has purposefully directed its actions to California, the court typically must consider actions taken by the defendant outside California that have some

28    foreseeable effect in this forum.  *Id*., at 1155-1157.

haled into court here.  Mullare's contacts are "random, fortuitous, and attenuated" and do not justify an exercise of jurisdiction.  *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 475 (1985).

### A.   <u>Phone calls with California residents</u>

The evidence would not support an inference that there were more than two or three phone calls between Mullare and California.  The evidence indicates that Larada Horner, Lela's sister-in-law and a resident of New Mexico, initiated the first phone contact with Mullare.  With this phone call the Horners solicited activities that would take place in Colorado – *i.e.*, pick up of Lela's body in Colorado, coordination of a second funeral, and burial in Colorado.  Mullare also spoke to representatives at Keystone in one or two phone calls confirming delivery arrangement for Lela's body.  Declaration of Thomas Murphy, filed September 23, 2008, ("Murphy Decl."), at ¶¶8 and 14; Declaration of Bryan Anderson, filed November 25, 2008, ("Anderson Decl."), at ¶3; Declaration of Andje Morovich, filed November 25, 2008, ("Morovich Decl."), at Exs. B and D.

These two or three phone calls between Mullare and the forum do not constitute sufficient contacts where, as here, defendant did not initiate the contact - - but merely responded to a solicitation.  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).   These minimal calls, initiated by the Horners, are not sufficient to satisfy due process.

### B.   <u>Mullare's Contract with Larada Horner</u>

Mullare's contract with Larada Horner also does not constitute the kind of forum contact that could support an exercise of jurisdiction.

Larada Horner was a resident of New Mexico.  She executed the contract with Mr. Murphy in Colorado after Lela's body was delivered to him in Colorado.

Morovich Decl., at Ex. B (Murphy Deposition transcript, at Ex. 202). The contracting parties did not contemplate a continuing relationship, and the contract provided for services to be rendered only in Colorado, not in California.

Moreover, although the contract pertained to disposition of the remains of a California resident, the deceased had significant ties to the New Mexico/Colorado area. She was raised in New Mexico and married a Colorado native in Colorado -- which (apparently) is why she wished to be buried there as opposed to in California. Anderson Decl., at Ex. B. Additionally, while services to be rendered under the contract would benefit some California residents who were not parties to the contract (Lela's husband and adult children, who intended to travel to Colorado for the second funeral), this kind of benefit is too attenuated to support jurisdiction. Mullare would not reasonably expect to be haled into a California court if California attendees of the Colorado funeral were unhappy with Mullare's services.[2]

### C.   The effects of Mullare's conduct foreseeably might be felt by people in California

Keystone argues that Mullare's activities were purposefully directed to California because Mullare knew that its actions would effect California residents. Specifically, Keystone alleges that Lela's family, upon returning to California after the Colorado funeral, would have continued to suffer emotional pain as a result of not having an opportunity to see Lela one last time. Keystone also argues that it, too, is feeling the effects of Mullare's alleged negligence here in California because it is enduring a lawsuit by plaintiffs.

---

[2]We note that the evidence supports an inference that Larada Horner's contract with Mullare did not provide for any embalming services. Morovich Decl., at Ex. C. This further suggests that the services to be provided by Mullare were somewhat more ministerial in nature -- intended to facilitate transport and burial. If Mullare was not providing 'full' funeral services to the Horners it would be even less likely to anticipate being haled into a California court.

1    Forseeable effects in the forum state will not be sufficient to establish

2    minimum contacts without a showing of conduct expressly aimed at California.[3]

3    *Pebble Beach*, 453 F.3d at 1156-1157; *Schwarzenegger v. Fred Martin Motor Co.*,

4    374 F.3d 797 (9th Cir. 2004).  See also, *Gray*, 913 F.2d 758*; Burger King*, 471

5    U.S. at 474.  A defendant purposefully directs actions to California if plaintiff

6    (cross claimant) identifies an intentional act expressly aimed at the forum that

7    caused harm which was suffered in California and which defendant knows is likely

8    to be suffered in California.  *See, Pebble Beach*, 453 F.3d at 1156-57; *Rio*

9    *Properties Inc., v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).[4]

10    Keystone has not identified conduct by Mullare expressly aimed at

11    California.

12    Mullare did not specifically direct any actions to California.  Plaintiffs

13    (Lela's family) contacted Mullare.  Mullare did not solicit business from California

14    residents.  Mullare's contact information is available in several trade publications

15    that list funeral homes around the nation and is provided by those publishers via a

16    passive website and hard copy to funeral homes around the country.  The fact that

17    Mullare's contact information is listed in trade publications, along with 22,000

18    other funeral homes around the country, does not constitute conduct aimed at

19

20

21    [3]We do not mean to suggest that there is no possibility that in some circumstances
22    foreseeable effects might suffice to support jurisdiction, *e.g.*, perhaps if those effects were
      widespread and invaded interests of great moment to the forum state.

      Additionally, we focus on the effects on the Horner family.  We find that Mullare could
23    not reasonably have foreseen that its conduct would effect Keystone.  Mullare had no contract
      with Keystone and contact between the two companies was limited to one or two telephone calls
24    coordinating delivery of Lela's body to Colorado at the Horners' direction.  It would not be
      reasonable to expect Mullare to foresee that its transport and burial of Ms. Horner in Colorado
25    would subject it to claims by an unrelated funeral home that provided the family with prior
      funeral services in California.
26
      [4]*See also, Calder v. Jones*, 465 U.S. 783 (1984).  The traditional "Calder test" provides
27    that "the brunt of the harm" must be felt in California.  The Ninth Circuit has clarified that, as
      long as constitutionally sufficient harm is felt in the forum state, it will not matter that more
28    harm is felt in another state. *Yahoo! Inc., v. La Ligue Contra Le Racism and L'Antisemitism*, 433
      F.3d 1199 (9th Cir. 2006).

California.[5]  *Accord, Cybersell, Inc., v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997) (passive websites not sufficient to establish jurisdiction); *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008); (nationwide advertising without more not sufficient).

### D.     Provision of services to other California residents

Mullare concedes that it has provided funeral services in Colorado for California residents three or four times over the past five years.  Murphy Decl., at 6.  However, Mr. Murphy represents that he did not solicit any of this business and that each of those deceased persons was originally from the Trinidad, Colorado area and sought to be returned there for burial.  Murphy Decl., at ¶6.  Although these deceased people were California residents, they obviously also had strong ties to Colorado.

Mullare does not actively seek to conduct business with Californians.  Mullare is a one-man operation located in a remote area of Colorado occupied by fewer than 10,000 people.  The few instances in which Mullare provided services in Colorado to California residents formerly from Colorado do not rise to the level of minimum contacts necessary to satisfy due process.  "[S]ome single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum."  *Burger King,* 471 U.S. at n. 18 citing *International Shoe Co., v. Washington*, 326 U.S. 310 (1945) internal quotations omitted.

Moreover, it would contravene public policy to discourage funeral homes from providing services to local kin who want to 'return home' for fear of being haled into an out of state court by that person's loved ones.

---

[5]Keystone does not argue that Mullare's placement in trade publications was an intentional act directed at California.

In sum, Keystone has not proffered evidence which, if believed, would support a finding that Mullare had contacts with California of a magnitude or character sufficient to create a reasonable expectation that it would be haled into court here.

Because we find that Keystone has not satisfied the first requirement for establishing specific jurisdiction, we need not reach the second and third prongs of the test (relatedness and reasonableness).

## II.    Keystone's request that the Court dismiss the Horner's Complaint

Keystone asks the Court to dismiss plaintiffs' (the Horners) case for failure to join an allegedly indispensable party (Mullare), citing Rule 19 of the Federal Rules of Civil Procedure.  Keystone's "argument" is cursory at best.[6]  The Court DENIES Keystone's request without prejudice.  If Keystone believes it is entitled to this relief it will need to file a properly noticed motion fully briefing the relevant issue and providing plaintiffs a meaningful opportunity to respond.

## III    Conclusion

For the reasons stated above, the Court GRANTS Mullare's Motion to Dismiss the Cross-Complaint.

The Court DENIES, without prejudice, Keystone's motion to dismiss plaintiffs' complaint for failure to join an indispensable party.

IT IS SO ORDERED.

Dated: December 19, 2008

_____
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to: parties, wdb, stats

---

[6]Essentially, Keystone's argument consists of one sentence.  Opposition at 11:7-11.