1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11  THE FAMILY OF LELA KAYE HORNER,          No. C 07-03441 WDB
12            Plaintiff,                     **COURT'S PROPOSED VOIR DIRE**
13     v.
14  KEYSTONE AMERICA INC.,
15            Defendant.
16  _____/
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

# IMPANELING A CIVIL JURY

***** Have enough <u>copies</u> of the standard <u>background voir dire questions</u> so that each person in the venire will have one.

***** Have pencils for each person in the venire.

**Give counsel alphabetical list of jurors**.  Court has both the alphabetical list and a *randomized list* – the latter is *not disclosed* to the lawyers but is used by the court to call jurors into the jury box (in numerical order as the names have been randomly listed).

1. **Welcome** and thank the entire venire.

2. Courtroom **deputy calls the roll**.

3. **Introduce** myself and my staff for this trial:

      Law clerks:  Sarah Weinstein and Hera Kim

      Courtroom deputy:  Ivy Garcia

      Court reporter(s):  Diane Skillman and Raynee Mercado

**United States District Court**
For the Northern District of California

4. This morning we will be selecting a jury for a <u>civil</u> lawsuit, not for a criminal case.

It might <u>take about five days</u> to complete the trial of this case.

5. Courtroom **deputy administers oath** to all people in venire.

6. Courtroom deputy **calls first fourteen jurors on randomized list into the jury box.**  Remaining prospective jurors remain seated in audience area (other side of gate, rail).

7. **Introduce the parties and their attorneys**:

> At this juncture I will introduce the parties and their lawyers. Please pay careful attention because in a few minutes I will ask whether, before today, any of you have had any contact with or heard anything about any of them.

> The <u>plaintiffs</u> in this case are members of the family of Lela Kaye Horner, who passed away on July 7, 2005.   Mr. and Mrs. Horner had lived in the Clearlake area for some 20 years before Mrs. Horner died.

> Harold Horner [husband]
> Connie Britt [daughter]
> Andy Horner [son]
> Cheryl (Horner) Christensen [daughter]
> Larada Horner [sister-in-law/Harold's sister]

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

The <u>lawyers</u>  who represent the plaintiffs are:

    Michael Byron Cohen
    Russell Alan Robinson

The <u>defendant</u> in this case is:

    Keystone America Inc., doing business as
    Jones and Lewis Clear Lake Memorial Chapel

The <u>lawyers</u> who represent the defendant are:

    Howard Churchill
    Andje Morovich Medina
    Robert Ford

## **Explain the Purposes and Mechanics of the Jury Selection Process**

There are **two primary purposes** of the jury selection process in which we will engage today:

    <u>the first is</u> to **make sure that none of the jurors who sit** in this case is **biased or prejudiced** against any party or,

        before today, had any **personal knowledge** of the factual matters that this case involves.

**United States District Court**
For the Northern District of California

the second is to give the parties an opportunity to get the kind of **balance or mix of perspectives and backgrounds** in the jury that they feel is best suited to the case.

Explain the **mechanics** of the jury selection process:

First, I will ask **all** the prospective jurors some general questions.

Then each of the 14 people in the jury box will answer, aloud, each of the written questions posed on the sheet of paper we have given each of you.

After these people have addressed the questions on this sheet of paper, I will ask them some additional questions that will be more focused on matters relating to the case at hand.

While I am asking these questions of the group of 14 jurors who are in the jury box, all the other prospective jurors should pay careful attention to the questions and should make a note of any question to which you would answer "yes".

It is very likely that some of you will be asked to replace prospective jurors who are now seated in the jury box but who are excused for one reason or another.
When one of you is called to replace a juror who has been excused, I will want to know if you would answer "yes" to any of the questions I have asked of the group in the jury box.

**United States District Court**
For the Northern District of California

As we move through this process <u>I may excuse some</u> prospective jurors "**<u>for cause</u>**,"

       e.g., because they had personal knowledge of important matters that are part of this case before they came here today.

Each prospective juror who is excused for cause will be replaced by one of the people outside the jury box.

       When such a replacement occurs, we will ask the new prospective juror to provide answers, orally, to the <u>background questions</u> on the sheet you have been provided.

<u>Then</u> we will ask the new person <u>whether</u> he or she <u>would answer</u> <u>"yes" to any of the questions that I have thus far posed</u>.  If so, we will identify the questions and ask for some follow-up information.

Our goal at the close of this part of the jury selection process is to have 14 prospective jurors seated in the jury box who are not excusable for cause.

After we have 14 jurors in the jury box who are not excusable for cause, the law permits each side to exercise what are called **"<u>peremptory challenges</u>**," meaning that <u>each side</u> may excuse up to <u>three</u> prospective jurors.

**United States District Court**
For the Northern District of California

> When parties excuse prospective jurors in this process it is **not**
> because of any personal dislike or distrust,
>
> but in order to get a final jury panel that has the kind of balance
> that the parties feel is appropriate for this case.

The parties will exercise these peremptory challenges confidentially and one at a time by passing a list of the 14 prospective jurors who are seated in the jury box back and forth until each side has used all the challenges it chooses to use.  [plaintiff exercises first challenge, then defendant, then back to plaintiff, etc.]

After this process has been completed, **the remaining 8 jurors will constitute the jury** for this trial.

If more than 8 jurors remain, the 8 who have been assigned the lowest numbers will serve.  The others will be excused.

We will **not have any "alternate jurors**."

This means that all 8 of the people who comprise the jury will hear the evidence and arguments, will participate fully in the deliberations, and will vote on the verdicts.

**In federal court, a verdict must be unanimous.**

United States District Court
For the Northern District of California

General **admonition** about listening to and answering the questions posed during the voir dire process:

    Listen carefully to each question I pose.

    When deciding what your answer is, work hard to be honest with yourself.

    Do not offer an answer simply because you think it is what I want to hear.

    Do not try to guess what the "right" answer is, or what the "politically correct" answer is.

        There is no such thing, in this court, as a "politically correct" answer, and the only 'right' answers are those that are thoughtfully truthful.

# GENERALLY WHAT THIS CASE IS ABOUT

At this point I would like to give you some information about this case.

The purpose of providing this information at this juncture is to enable you to determine whether, before coming here this morning, you acquired any information about the matters in dispute here.

This brief description is <u>not evidence</u> and is not part of the formal instructions that I will give later.

Lela Horner passed away on July 7, 2005.  Shortly thereafter, her family entered a contract for funeral services with Jones and Lewis Clear Lake Memorial Chapel (an agent of defendant Keystone America, Inc.). The Jones and Lewis mortuary was staffed at the time by Les Howerton, Bryan Anderson, and Jeanette Sousa, among others.

Jones and Lewis agreed to handle a local funeral service, to embalm Mrs. Horner, and to arrange to have her transported to Colorado for a second funeral service that was to include an open casket viewing.

The plaintiffs in this case claim that the defendant mortuary failed to properly embalm the body of Lela  Horner, thus depriving them of a final viewing of the body, and otherwise failed to provide appropriate and dignified services of the type that bereaved family members normally anticipate.

1    The defendant denies that it failed to provide appropriate and
2  professionally competent services.

3    Defendant also contends that factors outside of the control of
4  defendant actually caused plaintiffs' alleged harm.   Specifically,
5  defendant contends that a Colorado funeral home (managed by mortician
6  Thomas Murphy) was professionally negligent in handling Mrs. Horner's
7  body after it reached Colorado and that it was that professional
8  negligence, rather than any act or omission by defendant, that caused any
9  harm the plaintiffs suffered.

10

11    Plaintiffs deny that Mr. Murphy, or any other agent of the Colorado
12  funeral home, was professionally negligent.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# GENERIC QUESTIONS FOR <u>ALL</u> MEMBERS OF THE VENIRE

1.  Do any of you <u>not</u> understand or read English?

2.  Before today, have any of you had any contact with or heard anything about any of the parties or lawyers in this case?

3.  Before today, have any of you had any contact with or heard anything about me or any members of the court staff I have introduced?

4.  Do any of you have any personal knowledge of any of the matters that are the subject of this case?

5.   Before today, had any of you heard anything about the dispute between these parties or about the events out of which it has arisen?

**United States District Court**
For the Northern District of California

## PRIOR CONTACT WITH OR KNOWLEDGE OF <u>POTENTIAL WITNESSES</u>

**[ask these questions of <u>all</u> the members of the venire]**

At this juncture I will read to you a list of the people from whom testimony might be presented (either live or by deposition) during the trial.

Please don't be intimidated by this list.  While it is lengthy, some of the people on it will testify very briefly, and we are by no means certain that all these people will testify -- but I need to err on the side of caution and ask about all of them now.

Please listen carefully to each name.

> If you hear the name of any person with whom you have had contact, or about whom you have heard anything, please raise your hand.

1

**[READ NAMES OF POSSIBLE WITNESSES]**

2

3      All of the plaintiffs (i.e., Harold Horner, Connie Britt, Andy Horner,

4   Cheryl (Horner) Christensen, and Larada Horner).

5

6            Ted Christensen

7            Elaine Newkirk

8            Candy Vargas

9            Tom Murphy

10           Jeanette Scott (formerly Jeanette Sousa)

11           Bryn Anderson

12           Lloyd Cunningham

13           Shari Lewis (Shari Fisher)

14           Robin Humphry

15           Melissa Johnson-Williams

16

17           Les Howerton

18           Richard Callahan

19           Thomas Murphy

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

[Follow-up questions if any prospective juror indicates that he/she knows or has heard of any of the witnesses:

What are the circumstances under which you came to know, know about, or have contact with this person [witness]?

What do you know about the person?

Is there any reason you would ascribe either more or less credibility to testimony this person might give than to testimony from any other witness who might be called in this case?

Does your prior knowledge of or contact with this witness cause you to question your capacity to decide this case in a fair and impartial manner?]

**[Shift focus to the 14 people in the jury box]**

HAVE EACH OF THESE 14 PROSPECTIVE JURORS ANSWER ALOUD THE GENERAL BACKGROUND QUESTIONS ON THE SHEET THAT HAS BEEN HANDED OUT.

1.  Please state your name:

2.  Please tell us what city you live in:
> a.  How long have you lived there:
> b.  Where did you live before:

3.  What is your current occupation:
> a. How long have you been so employed:
> b. What are your previous occupations, if any:

4.  Please give us the following information about your family:
> a.  Are you married or do you have a domestic partner:
> > 1.  If so, what is your spouse's or partner's current occupation and by whom is
> > he/she employed?
> b.  Do you have any children?
> > If so:
> > > 1.  How many?
> > > 2.  What ages?
> > > 3.  What are their occupations, if any?

5. Did you ever serve in the military or the armed forces reserves?

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

6.   Please give the <u>names of any organizations of which you are a member</u>.

**[Ask the following questions only of the 14 prospective jurors]**

**If** any of you would answer <u>***yes***</u> to any of these questions, please **raise your hand**.

1. Before today, had any of you **met or heard of** any of the **other prospective jurors** who are sitting in the jury box now?

2. During the past five years, have any of you **served on a jury**?

     A. Was it a civil or a criminal case?

     B. If civil, what, in general, was the nature of the plaintiff's claim?

     C. <u>Without telling me the outcome</u>, or who won, please tell me whether or not the jury was able, in the end, to reach a verdict.

There is a <u>substantial difference</u> between the <u>burden of proof</u> in a <u>criminal</u> trial and the burdens of proof that may apply in <u>civil</u> trials.

     In a **<u>criminal</u>** trial, the defendant is acquitted unless the prosecution proves all the essential facts **<u>beyond a reasonable doubt</u>**.  That demanding standard never applies to a claimant in a <u>civil</u> case.

     The burden of proof that applies most of the time in **civil** cases is less demanding.  It is called **"preponderance of the evidence."**

**United States District Court**
For the Northern District of California

To meet this standard, the claimant must show that <u>the essential facts are more likely true than not true.</u>

**Question** <u>for the prospective jurors in the box</u>:

Of those among you who have served on juries before,

<u>is there any one of you who would not</u> be able to **set aside what you were told about the law in other cases** as you sit in this trial --

and to base your deliberations in this case solely on the law as I instruct you in it and on the evidence that I admit?

3. Have any of **you** ever **been a party** (either as a plaintiff or as a defendant) to any lawsuit, civil or criminal?

If so, were you a plaintiff or a defendant?

What was the nature of the case?

Is there anything about that experience that would compromise your ability to decide the matters in issue in this case fairly and impartially, solely on the basis of the evidence that is admitted during this trial and the law as I instruct you in it?

4.  Has anyone in **your immediate family** ever been a <u>**party**</u> to a lawsuit, civil or criminal?

5.  Have any of you, or any member of your immediate family, made a **claim for compensation for emotional distress** or mental suffering?

6.  Have any of **you** ever **given testimony** in any kind of trial?

7. Have **you**, or has anyone in **your immediate family, attended law school** or had any other **formal training in the law?**

> If so, will you put whatever knowledge of the law you may have acquired before today out of your mind during this trial, and will you promise to apply only those legal principles in which I instruct you, and to construe them during your deliberations only as I explain them?

8.  **Have you, or has anyone in your immediate family, had any work experience in the law**, in a court, in a law firm, or in a law-related business?

9.   Do any of you have such **strong feelings about civil litigation**, generally, that you would not be able to decide impartially
what the evidence in this case shows  or
to enter a judgment under the legal principles the Court sets forth?

[Case-specific questions:]

10. Have any of you, or any member of your immediate family, ever lived in Clearlake, California, or Branson, Colorado?

11. Other than standard courses in high school or college, have any of you been trained in any medical, biological, or anatomical sciences?

12.  Have any of you, or any member of your immediate family, ever worked in the medical field?  (e.g., for a hospital or a nursing home?)

13. Have any of you, or anyone in your immediate family, ever worked for a funeral home, a mortuary, or a cemetery?

14. Have any of you, or any member of your immediate family, ever done substantial business with or had substantial business contacts with a funeral home or mortuary?

15. Have any of you, or has any member of your immediate family, ever had a negative or troubling experience with a mortuary or funeral home?

       If so, did you take any steps, formally or informally, to have the situation addressed?  [Did you report the matter to anyone?  Seek

United States District Court
For the Northern District of California

some kind of relief or compensation from the service provider? File a lawsuit?]

16. Have any of you ever attended a funeral, a memorial, or a burial service in connection with which it appeared that the person who had died had not been appropriately handled by the service provider, or in which the service provider seemed to have mishandled some other significant part of the occasion?

17. Do any of you have such strong feelings about the appropriateness or the importance of an open casket viewing of someone who has died that you would not be able to decide the issues in this case objectively and to base your findings only on the evidence admitted during the trial and the law as the Court instructs you in it?

18. Based on what we have told you today about this case, is there any aspect of this dispute that would compromise your ability to decide the case impartially and rationally, without bias for or against any party?

19. Do any of you **not** understand that **being fair and impartial** as a juror means, among other things:

**not** bringing any **biases or preconceptions** to your work,

**United States District Court**
For the Northern District of California

but, instead, **approaching at the outset the testimony of each witness,**

and the arguments of each lawyer,

on exactly the **same terms**,

so that you do not tend to credit or discredit anyone simply because of their status, or what work they do, or where they were born, or how they speak,

and **not permitting emotions** of any kind **to distort your reasoned judgment** about what the facts are and what your verdict should be under the law?

_____

**If I excuse** any prospective jurors for cause, **replace** them [with the juror next in order on the court's randomized list] and have the replacement jurors <u>begin by answering aloud the background questions</u> on sheets we have handed out.

**Then ask** the replacement juror if he/she **would have answered "yes"** to any of the questions posed to jurors in the box.

If so, ask appropriate follow-up questions.

**United States District Court**
For the Northern District of California

**Once I am satisfied that the 14 jurors in the box appear to be qualified to serve in this case,**

    **I ask counsel to approach the bench:**

        **1. inquire if there is a <u>need for additional questions</u>, by the court or by counsel.**

        **2. if not, or after such questions, _ask counsel_ (in sidebar) _whether_ they <u>move to exclude any prospective jurors for cause</u>.]**

    **Any <u>EXCUSALS FOR CAUSE MUST BE EXPLAINED ON THE RECORD.</u>**

<u>_Once there are 14 jurors in the box_</u> who are not subject to being excused for cause, begin the **peremptory challenge** process.

The **<u>peremptory challenge process:</u>**

    Have the courtroom deputy prepare a fresh list of the 14 jurors, then give it to plaintiff's counsel, who will (in private) exercise the first peremptory challenge.

    Then have the deputy carry the paper over to defense counsel, who will exercise their first peremptory challenge.

    Continue this process until each side has exhausted its three (3) peremptory challenges.

**The jury consists of the first eight (8)** jurors, working up from the lowest numbered juror, who remain after the peremptory challenges have been exercised.

**Thank and excuse remaining prospective jurors.**

**<u>Clerk administers the final oath</u> to the jurors who will hear the evidence.**

**I give the "opening" instructions or, if we recess, the generic instruction about <u>conduct as jurors.</u>**

**United States District Court**
For the Northern District of California