1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

THE FAMILY OF LELA KAYE HORNER,

No. C 07-03441 WDB

9

            Plaintiff,

**COURT'S JURY INSTRUCTIONS;**
**VOIR DIRE**

10

      v.

11

KEYSTONE AMERICA INC.,

12

            Defendant.

13

_____/

14    Having considered the parties' written submissions following the pretrial conference,

15    the Court rules that the following jury instructions will be given at trial as opening

16    instructions, except as otherwise indicated.  With respect to Instruction Number 5 on

17    stipulated facts, the parties must submit additional stipulations of pertinent fact, if any, by no

18    later than 12 noon, September 11, 2009.  Furthermore, the Court has revised the voir dire

19    questions, as attached.

20    The Court hereby DENIES Plaintiffs' request to have damages determined for the

21    Plaintiffs as a whole family, rather than individually, with leave for Plaintiffs to submit

22    authority under California law that would make it lawful and appropriate to do so.  Plaintiffs

23    may submit a supplemental letter brief addressing that issue by no later than 5:00 p.m.,

24    September 10, 2009.  Defendant may file a response, if necessary, by no later than 5:00 p.m.,

25    September 11, 2009.

26    **IT IS SO ORDERED.**

27

28    Dated:  September 10, 2009

_____
WAYNE D. BRAZIL
United States Magistrate Judge

*United States District Court*
*For the Northern District of California*

# TABLE OF CONTENTS

1.   **DUTY OF JURY**
2.   **THE TWO KINDS OF CLAIMS PRESENTED BY PLAINTIFFS**
3.   **THE CLAIM THAT THE DEFENDANT FAILED TO PROVIDE APPROPRIATE AND DIGNIFIED SERVICES**
4.   **THE CLAIMS BASED ON ALLEGED PROFESSIONAL NEGLIGENCE**
5.   **STIPULATIONS OF FACT**
6.   **CORPORATIONS — EQUAL TREATMENT**
7.   **SCOPE OF LIABILITY OF CORPORATE DEFENDANT**
8.   **CAUSATION: SUBSTANTIAL FACTOR**
9.   **APPORTIONMENT OF RESPONSIBILITY**
10.  **DAMAGES: BURDEN OF PROOF AND DEFINITION OF "EMOTIONAL DISTRESS"**
11.  **BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**
12.  **WHAT IS EVIDENCE**
13.  **WHAT IS NOT EVIDENCE**
14.  **DIRECT AND CIRCUMSTANTIAL EVIDENCE**
15.  **EVIDENCE FOR LIMITED PURPOSE**
16.  **DEPOSITION IN LIEU OF LIVE TESTIMONY**
17.  **CREDIBILITY OF WITNESSES**
18.  **EXPERT OPINION**
19.  **RULING ON OBJECTIONS**
20.  **BENCH CONFERENCES AND RECESSES**
21.  **NO TRANSCRIPT AVAILABLE TO JURY**
22.  **TAKING NOTES**
23.  **CONDUCT OF THE JURY**
24.  **COMMUNICATION WITH COURT**
25.  **OUTLINE OF TRIAL**
26.  **DUTY TO DELIBERATE**
27.  **RETURNING A VERDICT**

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

## DUTY OF JURY (COURT READS INSTRUCTIONS ONLY)

2  Ladies and gentlemen: You are now the jury in this case.  It is my duty to instruct you

3  on the law.

4  You must not infer from these instructions or from anything I may say or do as

5  indicating that I have an opinion regarding the evidence or what your verdict should be.

6  It is your duty to find the facts from all the evidence in the case.  To those facts you

7  will apply the law as I give it to you.  You must follow the law as I give it to you whether

8  you agree with it or not.  And you must not be influenced by any personal likes or dislikes,

9  opinions, prejudices, or sympathy.  That means that you must decide the case solely on the

10  evidence before you.  You will recall that you took an oath to do so.

11  In following my instructions, you must follow all of them and not single out some and

12  ignore others; they are all important.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

## 1.   DUTY OF JURY

**(COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you will be provided a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**United States District Court**
For the Northern District of California

## 2.     THE TWO KINDS OF CLAIMS PRESENTED BY PLAINTIFFS

The plaintiffs in this case assert two kinds of claims against defendant Keystone.  In the first, plaintiffs allege that defendant breached its duty to provide appropriate and dignified services.  In the second kind of claim, plaintiffs allege that the way defendant's embalmer performed the embalming of Lela Horner was professionally negligent.   We will provide separate instructions for each of these different kinds of claims.

## 3.     THE CLAIM THAT THE DEFENDANT FAILED TO PROVIDE APPROPRIATE AND DIGNIFIED SERVICES

Under California law, a mortuary has a duty to provide its services in the appropriate and dignified manner that bereaved family members normally anticipate; the way a mortuary interacts with bereaved family members must be respectful of their feelings. This duty is not limited to the conduct of the funeral rites, but extends through arranging the commitment of the remains through burial.

Plaintiffs claim that the defendant's agents breached this duty.  Plaintiffs also claim that the breach of this duty by Defendant caused the Plaintiffs to suffer emotional distress damages.

Plaintiffs bear the burden of proving, by a preponderance of the evidence, that Defendant's agents breached this duty and that the breach caused Plaintiffs to suffer emotional distress damages.

**United States District Court**
For the Northern District of California

## 4.    THE CLAIMS BASED ON ALLEGED PROFESSIONAL NEGLIGENCE

The second type of claim that the plaintiffs present in this case is based on alleged professional negligence by the mortuary in the way it performed the embalming of Lela Horner.  Embalming involves the use of specialized knowledge, training, and skills that are rooted in science.  An embalmer is a professional who is expected to perform in conformance with the standards the embalming profession.  An embalmer is negligent if she fails to use the skill and care that a reasonably careful embalmer would use in similar circumstances.  We refer to this level of skill, knowledge, and care as "the standard of care."  Work that falls below the applicable standard of care constitutes professional negligence.

Plaintiffs bear the burden of proving, by a preponderance of the evidence, their claim that the way Defendant's agents performed the embalming of Lela Horner fell below the standard of care.  If Plaintiffs prove that the embalming fell below that standard, Plaintiffs also bear the burden of proving that the professional negligence by Defendant's agents caused plaintiffs to suffer emotional distress.

United States District Court
For the Northern District of California

## 5.  STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.

1.      Defendant entered into a contract for funeral related services with Plaintiff Harold Horner.

2.      Harold Horner did not view of the body of his wife after it arrived in Colorado.

### 6.  CORPORATIONS — EQUAL TREATMENT

All parties are equal before the law, and a party that is a corporation is entitled to the same fair and conscientious consideration by you as any other kind of party.

### 7.  SCOPE OF LIABILITY OF CORPORATE DEFENDANT

Under the law, a corporation is considered to be a person.  It can act only through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

In this case, Keystone America, Inc., the defendant corporation, is responsible for acts or omissions by the Jones & Lewis Mortuary, by Bryan Anderson, or by Jeanette Sousa.

## 8.   CAUSATION: SUBSTANTIAL FACTOR

A party proves that an act, omission, or course of conduct constituted "a substantial factor" in causing harm if that party proves, by a preponderance of the evidence, that the act, omission, or course of conduct contributed to the harm occurring and did so more than trivially or remotely.

An act, omission, or course of conduct can be "a substantial factor" in causing harm even if it is not the only cause of that harm, and even if one or more other acts, omissions, or courses of conduct also is proved to be "a substantial factor" in causing the same harm.

**United States District Court**
For the Northern District of California

### 9.  APPORTIONMENT OF RESPONSIBILITY

Defendant claims that professional negligence by the mortician in Colorado was a substantial factor in causing the plaintiffs' harm.  To succeed on this claim, defendant must prove both of the following:

1. That the way the Colorado mortician performed his tasks in this case fell below the applicable standard of care -- thereby being professionally negligent; and

2. That his professional negligence was a substantial factor in causing the plaintiffs' harm.

If you conclude that plaintiffs proved that the work of the embalmers at the Jones and Lewis mortuary fell below the applicable standard of care and that that shortfall in performance was a substantial factor in causing harm suffered by plaintiffs, but if you also conclude that defendant proved that the Colorado mortician was professionally negligent and that his negligence also was a substantial factor in causing plaintiffs' harm, then you will need to decide how much responsibility for plaintiffs' harm to assign to each of the two instances of professional negligence.

The special interrogatories will ask you first to determine, separately for each plaintiff, the total amount of damages (if any) each plaintiff has proved he or she suffered as a result of all the professional negligence by the embalmers/morticians.  After making that determination separately for each plaintiff, you will be instructed, if appropriate, to decide how much responsibility to allocate for that total harm to defendant and how much to allocate to the Colorado mortician.  In other words, you will decide, separately for each plaintiff, how much the total harm that he or she suffered as a result of negligent conduct by embalmers/morticians is attributable to the below professional-par work by the defendant's agents and how much of that total harm is attributable to the below professional-par work by the Colorado mortician.   You will express your apportionment in terms of percentages – allocating a percentage to defendant and a percentage to the Colorado mortician.  For each plaintiff, the total of these percentages must be 100%.

United States District Court
For the Northern District of California

### 10.   DAMAGES: BURDEN OF PROOF

### AND

### DEFINITION OF "EMOTIONAL DISTRESS"

It is the duty of the Court to give you instructions in the law about damages.  In giving these instructions, the Court does not mean to suggest for which party your verdict should be rendered.

If you find that a plaintiff has proved one or more claims, you must determine whether that plaintiff also has proved that he or she suffered damages and, if so, what amount of compensation is appropriate.  A plaintiff has the burden of proving damages by a preponderance of the evidence.

"Damages" means the amount of money that will reasonably and fairly compensate a plaintiff for harm that was caused by a defendant's conduct that violated the plaintiff's rights.

There is only one type of harm for which the plaintiffs in this case are seeking compensation.  Plaintiffs claim that they suffered a type of harm that is referred to generally in the law as "emotional distress" as a result of Defendant's alleged breach of the duty to provide appropriate and dignified funeral services and as a result of Defendant's alleged professionally negligent embalming of Lela Horner.

It is for you to determine what damages, if any, a plaintiff proves.  A damages award must be based upon evidence and not upon speculation, guesswork or conjecture.

The term "emotional distress" includes a person's subjective experience of pain and all other kinds of unpleasant mental or emotional suffering, e.g., depression, sadness, fear, grief, anxiety, worry, shock, humiliation or indignity.

You may award reasonable compensation for emotional distress damages to a plaintiff if that plaintiff proves, by a preponderance of the evidence, that wrongful conduct by a defendant caused the plaintiff to suffer the emotional distress in the past or is reasonably certain to cause the emotional distress in the future.  You may not award damages for future harm that a plaintiff proves is possible but fails to prove is reasonably certain to occur.

There are no mathematical formulas or scientific means or standards for determining the amount of money that will fairly compensate a plaintiff for emotional distress damages. It follows that how much money should be awarded as fair compensation for any particular emotional distress is not a matter to be determined by expert opinion.  Instead, it is for you, the jury, as the voice of the community, to decide what amount of money represents fair compensation for any particular emotional harm that a plaintiff proves he or she has suffered or is reasonably certain to suffer in the future because of wrongdoing by a defendant.

**United States District Court**
For the Northern District of California

**11.  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## 12.   WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the parties have stipulated.

## 13.   WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, or will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

### 14.   DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

### 15.   EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

15

**16.   DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Jeanette Scott Sousa was taken on April 14, 2008.  You should consider her deposition testimony that is presented to you in court in lieu of live testimony, insofar as possible, in the same way as if she had been present to testify.

The deposition of Thomas Murphy's was taken on April 15, 2008.  You should consider his deposition testimony that is presented to you in court in lieu of live testimony, insofar as possible, in the same way as if he had been present to testify.

**United States District Court**
For the Northern District of California

16

**United States District Court**
For the Northern District of California

### 17.   CREDIBILITY OF WITNESSES

When they use the word "credibility," some people intend to refer only to whether or not a person is being "truthful" or a particular statement is the "truth."  In the law, however, the word "credibility" has a broader reach.  It embraces both "truthfulness" and "accuracy."

One aspect of assessing the "credibility" of a person or statement involves trying to determine whether the person who is speaking or who was the source of the statement is or was actually trying to tell the truth, trying to communicate accurate information, and not trying to deceive or mislead.  This is a determination about a speaker's state of mind and subjective intentions.

Human experience teaches us, however, that even people who are really trying to speak truthfully sometimes make statements, in good faith, that are in whole or in part simply inaccurate. In other words, we recognize that sometimes a person's account of an event or circumstance can be empirically erroneous in some respect even though that person is trying to describe what actually happened or what the circumstances really were.

Thus, when you as jurors are assessing the "credibility" of witnesses or statements, you are assessing both intent to be truthful and, separately, accuracy.  Making these kinds of assessments can be difficult and can call upon you to make sometimes subtle distinctions. Because making these kinds of assessments can be both challenging and important, the Court encourages you to approach this task with an open mind and to attend carefully to as many factors or circumstances that might be relevant to your determination as possible.

What such factors are probably will vary from situation to situation, but may include, among others, the following:

(1) the opportunity and the ability of the witness to see or hear or know the things about which the witness testifies;

(2) the quality and detail of the witness's memory;

(3) the witness's manner while testifying;

(4) whether the witness has any interest or stake in the outcome of the case, or has any reason to be biased or prejudiced in one direction or another;

17

(5) whether and to what extent other evidence contradicts the witness's testimony – and how well supported or reliable the contradicting evidence seems to be;

(6) the overall reasonableness of the witness's version of events, given common human experience and how people in similar circumstances generally would be expected to act or proceed.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

In deciding the facts in this case, you may ascribe credibility to everything a witness says, or part of it, or none of it.

**United States District Court**
For the Northern District of California

# 18.   EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

In assessing opinion evidence, you should consider the quality and completeness of the data on which it is based and the quality of the reasoning from or with that data.  You also should assess the sources and reliability of any assumptions or theories that play a role in the selection of the data underlying the expert's opinion and in the line of reasoning from that data to the expert's opinion.

It also is important to attend carefully to the character of the lawyers' questions in response to which experts present their opinions.  The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called "hypothetical questions."   In determining the weight to give to an expert's opinion that is based on assumed facts, you should consider whether the assumed facts are true.

In addition, try to identify any assumptions or theories that inform the lawyers' questions, and assess the reliability or accuracy of any such assumptions or theories that are incorporated into the questions.

Also consider whether the questions are clear and/or compound, as it is likely to be clear what opinion or information the expert is offering, or how useful or reliable that opinion or information might be, if the question that elicits the opinion is unclear or compound.

1

## 19.  RULING ON OBJECTIONS

2      There are rules of evidence that control what can be received into evidence.  When a

3 lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks

4 that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the

5 objection, the question may be answered or the exhibit received.  If I sustain the objection,

6 the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an

7 objection to a question, you must ignore the question and must not guess what the answer

8 might have been.

9      Sometimes I may order that evidence be stricken from the record and that you

10 disregard or ignore the evidence.  That means that when you are deciding the case, you must

11 not consider the evidence that I told you to disregard.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

## 20.   BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**United States District Court**
For the Northern District of California

## 21.  NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

## 22.  TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**United States District Court**
For the Northern District of California

### 23.  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails.  Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the bailiff to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

**United States District Court**
For the Northern District of California

### 24.  COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

## 25.  OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**26.  DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 27.   RETURNING A VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.